**DAVID J. HOLDSWORTH (4052)**

Attorney for Plaintiff

9125 South Monroe Plaza Way, Suite C

Sandy, UT  84070

Telephone (801) 352-7701

Facsimile (801) 567-9960

david_holdsworth@hotmail.com

---

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

---

| | | |
|---|---|---|
| GINA MONDRAGON, | : | **VERIFIED COMPLAINT** |
| | : | **(JURY TRIAL DEMANDED)** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| HEXCEL CORP., | : | Civil No.: 2:23-cv-00065-HCN |
| | : | |
| Defendant. | : | Hon. Howard C. Nielson, Jr. |

---

COMES NOW the Plaintiff, Gina Mondragon ("Ms. Mondragon" or "Plaintiff"), complains of Defendant Hexcel Corporation (hereinafter "Defendant" or "Hexcel"), demands trial by jury and as and for causes of action alleges as follows:

**JURISDICTION AND VENUE**

1. Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, including the Pregnancy Discrimination Act ("PDA"), and pursuant to the Americans with Disabilities Act ("ADA") and/or the Vocational Rehabilitation Act ("VRA"), for discrimination in employment and for

retaliation.  Jurisdiction is specifically conferred on this Court by 42 U.S.C. § 2000 e

(5) and the ADA/VRA.  Equitable and other relief are also sought under 42 U.S.C. §

2000 e (5) (g) and the ADA/VRA.  Jurisdiction is also based on 28 U.S.C. §§ 1331,

1332 and 42 U.S.C. § 1981, et. seq.

2.     Venue in this Court is proper in that the facts, events, actions and

decisions generating the claims alleged herein occurred within the federal district of

Utah.

**PARTIES**

3.     Plaintiff Gina Mondragon ("Ms. Mondragon" or "Plaintiff") is a

citizen of the United States and, at all times relevant hereto, was a resident of the State

of Utah.

4.     The entity Plaintiff names as Defendant herein is Hexcel Corp.

("Hexcel").  Hexcel is a manufacturer of advanced composite materials for the

aerospace, defense, and industrial markets with 19 manufacturing sites across the

globe, including one in West Valley City, Utah.  Hexcel is a business entity which does

business in Salt Lake County in the State of Utah.  Hexcel is an "employer" within the

meaning of Title VII, the ADA and the VRA.  On information and belief, Plaintiff

alleges Hexcel receives some funding from the federal government and is subject to the

2

VRA (as well as the ADA), and related Executive Orders applicable to federal contractors.

**STATEMENT OF FACTS**

5.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 4 above as if alleged in full herein.

6.     Defendant hired Plaintiff on May 27, 2014 to work as a Process Associate.

7.     Plaintiff began working for Hexcel on May 27, 2014, as a Process Associate. Throughout her entire employment period, Plaintiff remained working as a Process Associate in the Fibers Department, where Hexcel manufacturers long fibers made out of its advanced composite materials.  Generally speaking, Process Associates in the Fibers Department rotate among three manufacturing areas: the oxidation oven, the sizing rake, and the winders.

8.     Two-plus years later, on August 28, 2016, Plaintiff found out she had become pregnant.

9.     Plaintiff alleges that, due to her becoming and being pregnant, Defendant subjected her to discrimination on the basis of her gender, pregnancy, pregnancy-related conditions and actual or perceived disability.  Plaintiff alleges Defendant discriminated against her, in violation of Title VII, the PDA, and the

3

ADA/VRA in that she was denied accommodations and then terminated because of her sex, pregnancy, pregnancy-related conditions and actual or perceived disability.

10.     Plaintiff alleges that, after she became pregnant, due to the chemicals Defendant used in her work setting, she asked her supervisor to provide her with a list of all such chemicals with each chemical's MSDS sheet.  Plaintiff acknowledges Defendant eventually complied with her request.

11.     Plaintiff alleges her first doctor appointment for her pregnancy was September 29, 2016, at which time, she provided her doctor with the list of some of the chemicals used in her workplace.  Plaintiff alleges that her doctor requested that she immediately remove herself from the production line.

12.     Plaintiff alleges her OB/GYN, Dr. Douglas Burgett, requested that she be immediately removed from the fiber line area because, after he reviewed copies of the MSDS sheets of the chemicals which were currently being used by the Defendant and to which she was being exposed, Dr. Burgett believed that such exposure could be hazardous to Plaintiff's health and the health of her unborn baby.

13.     Plaintiff alleges her doctor's appointment was on a Thursday, and the rest of her scheduled shift was Friday, Saturday, and Sunday.

14.     Plaintiff alleges that, soon after learning that she had become pregnant, she presented a doctor's note regarding her pregnancy to Hexcel's

4

management and requested to be removed from chemical process areas for the duration of her pregnancy.  Plaintiff alleged that, instead of accommodating Plaintiff, Defendant placed her on leave and ultimately terminated her employment.

15.     Plaintiff alleges she notified her foreman of the doctor's request because she was supposed to go into work the following day. Plaintiff alleges she also sent the doctor's request to Taryn Rose, Human Resources.  Plaintiff alleges she went to work on Friday and no one said anything about her doctor's request.  She returned to work on Saturday and again no one said or did anything about her doctor's request. Plaintiff became very concerned that Hexcel was having her work against her doctor's requests and recommendations.

16.     Plaintiff alleges that, on Sunday, she went to work and worked part of the day but went home sick.  Plaintiff alleges she notified her doctor that nothing had changed and his requests were not being met. Dr. Burgett recommended that Plaintiff not return to work at Hexcel until Hexcel afforded her an alternative accommodation/option.

17.     Soon thereafter, Plaintiff told Hexcel's Human Resources Department that she was pregnant and that she had requested to be removed from any area where there would be close and daily exposure to chemicals being used in the manufacturing process, but Hexcel had not responded to her requests.

18.     Of the three processes within the Fibers Department, the oxidation oven is the only area were no chemicals are used in the process.  However, Plaintiff explained to Human Resources that work in that area necessitated working in a very hot work environment and that the heat from the oxidation oven would make her sick. She requested an alternate position.

19.     Hexcel did not reassign her to any other available position, and, instead, Hexcel engineered a situation where she was only given the option of applying for short-term disability benefits, but not continuing to work for Hexcel and earn a living.

20.     Thus, Plaintiff alleges that, when Defendant offered to place her in the oxidation ovens area, she notified her doctor and told him what working in the oxidation ovens entailed, including being exposed to the hot temperatures of the ovens, having to be able to climb up and down ladders, and work in such hot temperatures in full PPE coveralls.  Upon hearing Plaintiff's explanation, her doctor stated that she was absolutely not to work in that area because it was just as bad as the chemicals on the sizing rake because pregnant women are more susceptible to dehydration.  Overheating can impact the level of amniotic fluid available for the baby, resulting in birth defects, miscarriage and preterm labor.  Dehydration can cause the body to shut down, and especially during the early stages of a pregnancy, this can negatively impact the baby

and even terminate the pregnancy.  A high maternal fever can result in cleft palate in the fetus.  These very few examples (of many) were the reasoning why her doctor advised Plaintiff against working in the oxidation ovens area.  The oxidation ovens also released small amounts of HCN (hydrogen cyanide), which could also affect a growing fetus.

21.     Full-time employees at Hexcel receive coverage for short-term disability and long-term disability insurance benefits.  The short-term disability benefit is available for up to 26 weeks for any 12-month period.  At the end of the 26-week period, employees can apply for long-term disability benefits through third-party insurer, Matrix Absence Management.

22.     Plaintiff alleges that, during this process, Human Resources strongly recommended that Plaintiff leave working and apply for short-term disability which would pay her some fraction of her wage/salary.  When Hexcel Human Resources made that recommendation, Plaintiff had many questions because she did not know how short-term disability worked.  Human Resources explained to Plaintiff that she would be on a short-disability for six months, which would end just short of her full-term pregnancy, and, thereafter, Plaintiff would be placed on an unpaid medical leave of absence for the remainder of her pregnancy and could then return to her job.

23.     Thus, Plaintiff alleges she asked how such a short medical leave of absence would work and Hexcel informed her that, after her short-term disability ended, she would not be paid for the time while she was out on medical leave of absence but would still have her job.  Whereas, if, after her period of short-term disability ended, she decided to apply for long-term disability and was approved for long-term disability, Hexcel would terminate her employment.

24.     With respect to long-term disability, Petitioner alleges that, in the three years she worked for Defendant, she had paid for long-term disability benefits with every check, but Hexcel never explained that, if she decided to apply for long-term disability insurance benefits, she would lose her job.  Plaintiff alleges that she has communicated with other employees of Hexcel about this policy and none of them were aware of such a policy.  Plaintiff also alleges she has reviewed the union contract and could not find any such statement regarding the consequences of applying for and/or being approved for using long-term disability.

25.     Plaintiff alleges that, during this time, on September 30, 2016, she notified her supervisors and human resource manager about her doctor's requests.  It took several days for Defendant to respond.  Defendant provided Plaintiff with no accommodations, so her doctor advised her not to return to work until Hexcel made accommodations for her condition.

8

26.     Plaintiff alleges that Hexcel never did accommodate her condition and that, a few days later, Human Resources put her on short-term disability.

27.     Plaintiff started receiving short-term disability insurance benefits on October 2, 2016.  She exhausted her full 26-week period of disability benefit on or about March 30, 2017.

28.     Plaintiff alleges that, after her short-term disability insurance benefits exhausted, she was eight months pregnant and unable to return to work at that time because of her doctor's orders.  As she had been told by Human Resources that she could go on an unpaid medical leave of absence, Plaintiff alleges she relied upon Hexcel's representations when started receiving short-term disability benefits that, after her period of short-term disability ended, she would be put on a medical leave of absence.

29.     Plaintiff alleges that, when Plaintiff did not return to work at the exhaustion of her short-term disability benefit, Hexcel did not place her on a medical leave of absence, but instead terminated her employment.

30.     Plaintiff alleges that, on March 15, 2017, she received a call from Hexcel Human Resources stating that, if an application for long-term disability benefits were to be made and were to be denied, and she could not return to work by April 1, 2017 without any restrictions, she would not be placed on a medical leave of absence,

but she would be terminated.  At some point after March 15, 2017, Hexcel just terminated her employment.

31.     Plaintiff alleges that she does not know who terminated her employment or when it was terminated or why it was terminated.  Plaintiff alleges she received no letter from Hexcel stating that she was terminated.

32.     Plaintiff alleges that, on or about April 5, 2017, she logged into her workday application to get an employee's phone number and she noticed that the system stated next to her name "terminated".

33.     Thus, Plaintiff alleges Defendant did not offer any accommodations in terms of reassignment to any other available position without the presence of hazardous chemicals or hazardous levels of heat.  Instead, Hexcel placed her on short-term disability and that, at exhaustion of the 26-weeks short-term disability benefits, Hexcel did not put her on a medical leave of absence, but unilaterally just discharged her from her employment.

34.     Plaintiff alleges Defendant subjected her to discrimination because she was pregnant.  Specifically, she alleges that Hexcel did not accommodate her condition and then terminated her employment with Hexcel because of her pregnancy status.

35.     Plaintiff alleges that the determining factor in her termination was her sex, pregnancy, pregnancy-related conditions, and her actual or perceived disability, in violation of Title VII of the Civil Rights Act of 1964, as amended.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### DISCRIMINATION ON THE BASIS OF SEX/PREGNANCY

36.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 35 above as if alleged in full herein.

37.     Plaintiff alleges that Hexcel discriminated against her on the basis of pregnancy, childbirth, or related medical condition.

38.     Plaintiff alleges that Hexcel treated her differently than other persons not so affected but similar in their ability or inability to work.

39.     In late September 2016, Plaintiff requested to be transferred from the Fiber Department and be assigned to another position within the company because she was pregnant and could no longer be around the hazardous chemicals used in the manufacturing process or the hazardous heat in the oxidation ovens area.  Hexcel did not reassign Plaintiff or otherwise accommodate her.  Plaintiff acknowledges that for some available positions in the company, Plaintiff needed additional education, training, and experience.  Hexcel did not provide any of the above to Plaintiff.  As an alternative, Hexcel offered to let Plaintiff work exclusively in the oxidation ovens area

of the production line.  However, Plaintiff expressed the concern that the oxidation

oven area, where there is elevated heat, could endanger her and her unborn baby.  At

no time thereafter did Hexcel suggest other alternatives or otherwise seek to

accommodate Plaintiff.

40.     At the time of Plaintiff's employment, Hexcel offered its full-time

employees disability insurance benefits. The benefits included a 26-week short-term

disability insurance benefits, administered by Hexcel, and long-term disability

insurance administered through a third-party insurance carrier.  Hexcel strongly urged

Plaintiff to go on short-term disability, and led her to believe that, at the end of her six

months of short-term disability insurance, it would place her on a leave of absence

until she had her baby and she could then return to her job.

41.     Plaintiff relied on such representations, went along with Human

Resources's efforts to place her on short-term disability insurance, and, on October 2,

2016, Plaintiff temporarily stopped active work for Hexcel and began receiving short-

term disability insurance benefits.  When her 26-week short-term disability insurance

benefit was exhausted, Hexcel did not place her on a medical leave of absence or

otherwise accommodated her, but just terminated her employment.

42.    Accordingly, Plaintiff alleges Hexcel impermissibly discriminated against her and terminated her employment because she was female, pregnant and pregnancy-related conditions.

43.    Plaintiff alleges that Defendant's claim that she was unqualified to work in any other positions for the company and that it could not accommodate her doctor's requests is not accurate.  She alleges there was an employee named Brad Thomas, whose wife, Amanda, was pregnant, who was also an employee at Hexcel. Hexcel moved Amanda to the "doff" area, this is a position Plaintiff alleges she could have performed.  Another area where Plaintiff alleges she would have been able to work with no issues was the take-apps (end of the production process).  Plaintiff alleges there was also a warehouse position at Hexcel which Plaintiff knew would not expose her to chemicals or heat; Hexcel did not offer her such an option.  Moreover, while Plaintiff worked for Defendant, there were multiple occasions where accommodations were made for employees who were hurt on the job so that Defendant did not have to file a claim for loss of time for a work-related injury.  One example being an employee named Stephanie (a female, but who was not pregnant) who got her finger caught in a roller causing her to get hurt.  She was unable to do the functions of the job and because the employer did not want to have any time loss due to a work-related injury, she was allowed to do simple housekeeping jobs (such as pushing a

broom) for multiple weeks.  As another example, Plaintiff alleges a male employee

who got hurt on the job was placed in the "Castle" (office) to do office work. Plaintiff

alleges she still talks to employees who work at Hexcel and has been given information

about Hexcel's accommodation of other employees.

44.    Plaintiff alleges Hexcel's actions violated Title VII and the PDA.

**SECOND CAUSE OF ACTION**
**DISCRIMINATION ON THE BASIS OF DISABILITY**
**UNDER THE ADA AND/OR VRA**

45.    Plaintiff incorporates by this reference all allegations listed in

paragraphs 1 through 44 above as if alleged in full herein.

46.    Plaintiff alleges that her pregnancy and pregnancy-related

conditions was an actual disability in that it substantially limited her major life activity

of working or that Hexcel regarded her as being a person with a disability.

47.    Plaintiff alleges she was a qualified individual with a disability in

that, with reasonable accommodations, she could have performed the essential

functions of the job she held or desired.

48.    Plaintiff alleges that, because of her pregnancy, Plaintiff requested

reasonable accommodations.

49.    Plaintiff alleges she asked Hexcel for accommodations on a

number of occasions.

50.   Plaintiff alleges that, thereafter, despite her requests and the feasibility of accommodating her, Hexcel failed to accommodate her actual or perceived disability, and, then, terminated her employment because of her disability or because it regarded her as being disabled.

51.   Plaintiff alleges Hexcel's actions violated the ADA and VRA.

### THIRD CAUSE OF ACTION
### RETALIATION

52.   Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 51 above as if alleged in full herein.

53.   Plaintiff alleges that, when she requested reasonable accommodations, she engaged in protected activity under the PDA and the ADA/VRA.

54.   Plaintiff alleges that, after and because she requested reasonable accommodations, Hexcel began taking adverse actions against her, including, ultimately, terminating her employment.

55.   Plaintiff alleges that there is a causal connection between her protected activity and Hexcel's adverse actions.

56.   Plaintiff alleges there is a causal connection between her requests for accommodation and the adverse actions summarized above on the basis of temporal proximity and on the basis that the reasons Hexcel may give for the termination will be false and pretextual.

57.     Plaintiff alleges the termination was retaliatory because Hexcel terminated her employment and did not allow her to go on an unpaid medical leave of absence to return to a work.  Hexcel had informed Ms. Mondragon that she would be placed on a medical leave of absence and could then return to work, but instead of doing so, just unilaterally terminated her employment.

58.     On information and belief, Plaintiff alleges that Hexcel may or will assert that it was impossible to accommodate her condition.  Plaintiff alleges such reason is false.

59.     Given the lack of any documented issues with Plaintiff's performance, temporal proximity and the falsity of the reasons for the termination, Plaintiff alleges she was actually terminated in retaliation for requesting reasonable accommodations.

60.     Plaintiff alleges that, after the fact, Hexcel is looking for anything to defend its decision to unlawfully terminate her employment.  Plaintiff alleges this is further evidence of a retaliatory motive.

61.     Plaintiff alleges Hexcel's retaliatory actions violated the PDA and ADA/VRA.

**FOURTH CAUSE OF ACTION**
**BREACH OF CONTRACT**

62.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 61 above as if alleged in full herein.

63.     Plaintiff alleges Hexcel's own policies and her reliance thereon caused a contract to form between Hexcel and her as to her ability to return to work after her period of short-term disability insurance benefits ended.

64.     Plaintiff alleges that, after failing to afford reasonable accommodations for her pregnancy and after placing her on short-term disability insurance benefits, Defendant did not allow her to return to work, but terminated her employment.  Plaintiff alleges such adverse action constitutes a breach of contract.

## DAMAGES (AS TO ALL CLAIMS)

65.     Ms. Mondragon alleges Defendant's actions and inactions have caused her various losses, injuries and other damages, including lost wages, lost benefits, financial stress and emotional distress.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

66.     On or about September 15, 2017, Ms. Mondragon filed an Intake Questionnaire with the UALD.  This filing indicated her desire to activate the UALD/EEOC charge filing machinery.

67.     The UALD duly prepared a Charge of Discrimination.  On September 25, 2017, Ms. Mondragon formally signed her Charge of Discrimination.

68.     On September 27, 2017, the UALD received Ms. Mondragon's Charge of Discrimination.

69.     Plaintiff filed her Charge of Discrimination within 180/300 days from the last date of the alleged harm.  Plaintiff alleges the Court may exercise jurisdiction over all non-discrete discriminatory actions constituting a continuing violation beginning on or before March 31, 2017, the date which is 180 days before Petitioner filed her Charge of Discrimination, and continuing past March 31, 2017, and over all discrete discriminatory actions occurring on or after March 31, 2017.  The Court may treat all alleged discrete discriminatory actions occurring before this date as being untimely for purposes of relief, but may give weight to evidence of such for evidentiary purposes.  Plaintiff alleges all jurisdictional requirements have been met as required by Title VII of the Civil Rights Act of 1964, as amended, including the PDA, the Americans with Disabilities Act of 1990, as amended, and the Vocational Rehabilitation Act of 1973, as amended.

70.     That UALD subsequently waived Plaintiff's Charge of Discrimination to the EEOC.

71.     Subsequently, the EEOC determined that Defendant failed or refused to treat Plaintiff the same as non-pregnant employees who were similar in their ability or inability to work, thus, denying the Plaintiff an alternate or light-duty

assignment. In addition, the EEOC determined that Defendant placed Plaintiff on an involuntary leave, which eventually resulted in Plaintiff's termination. Therefore, the EEOC determined that there was reasonable cause to believe that Defendant had violated Title VII, the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e (k), when Defendant denied Petitioner an accommodation and terminated her employment.

72.    Title VII requires that, if the EEOC determines that there is reasonable cause to believe that violations have occurred, it shall endeavor to eliminate the alleged unlawful employment practices by informal methods of conference, conciliation, and persuasion.  Accordingly, the EEOC invited Defendant to join with it in an effort to work toward a just resolution of this matter.

73.    Upon finding that there is reason to believe that violations have occurred, the EEOC attempts to eliminate the alleged unlawful practices by informal methods of conciliation (*i.e.,* settlement).  Therefore, the EEOC invited the parties to join with it in reaching a just resolution of this matter.

74.    Defendant declined to enter into meaningful conciliation discussions, and, thus, because the EEOC's representative was unable to secure a settlement acceptable to the EEOC, the EEOC informed the parties in writing and advised them of the Court's enforcement alternative available to the Plaintiff.

75.     On or about November 14, 2022, the EEOC issued Plaintiff a Notice of Right to Sue letter.

## RELIEF REQUESTED

Accordingly, based on the above allegations, Plaintiff requests the following relief, specifically an Order and Judgment:

1.     Declaring that Defendant discriminated against Ms. Mondragon on the basis of her sex, pregnancy and pregnancy-related conditions, and her actual or perceived disability and retaliated against Ms. Mondragon, in violation of the Title VII of the Civil Rights Act, the PDA and the ADA/VRA;

2.     Awarding Ms. Mondragon "make whole" relief, including lost wages, the value of the lost benefits and compensatory damages;

3.     Awarding Ms. Mondragon her reasonable attorney's fees and costs;

4.     Awarding Ms. Mondragon such other relief as may be just and equitable.

DATED this 25th day of January, 2023.

  _/s/ David J. Holdsworth_____
David J. Holdsworth
_Attorney for Plaintiff_

**VERIFICATION**

Gina Mondragon, being first duly sworn, upon her oath, deposes and says that she is the Plaintiff in the above-entitled action, that she helped prepare and has read the foregoing COMPLAINT and understands the contents thereof, and the statements made therein are true to the best of her knowledge and recollection.


_/s/ Gina Mondragon_
Gina Mondragon


SUBSCRIBED AND SWORN to before me, a Notary Public, this _____ day of _____, 20___.


_____
NOTARY PUBLIC

MY COMMISSION EXPIRES:         RESIDING AT: _____

_____